The final case today, number 23-1216 UBS Financial Services, Inc. v. Estate of Pedro Jose Nazario Serrano et al. At this time, would counsel for the appellants please introduce himself on the record and begin. Good morning, Your Honours. Harold Vicente, for the plaintiffs, and the appellants. That's what I'm going to call counsel Harold Vicente Jr. The first thing, well first of all I'd like to reserve three minutes for, if I may. You may have three minutes. Thank you. The essential issue in this case is whether the court exceeded its jurisdiction by determining that these claims are applying as beneficiaries of the Puerto Rico retirement system had belonged, were derivative from a contract that UBS had with the retirement system itself. And that is not the case. Those causes of action of our clients who are retirees, who invested all of their lifetime savings for years into the retirement system, where they have a valid cause of action for the negligent, grossly negligent, and breach of fiduciary duty incurred by UBS, who was wearing multiple hats and recommended that the retirement system issue $3 billion in pension obligations that were the cause of its eventual demise and had to file for bankruptcy. Counsel, could I ask you a couple questions that you just raised? First of all, how is this outside the district court's jurisdiction? Well, that's what I was going to ask. My second question is you talked about your clients investing their life savings with the ERS. Did any of them make investments that were not statutorily mandated contributions? They had no choice but to invest that, except that they could have gone to work at another place. They stayed on the job. Every dollar that was in there was statutorily mandated. And they stayed on the job, Your Honor, because they thought that the system was working properly. When UBS recommended a $3 billion issuance of POBs, everybody felt that this was in great shape. And it wasn't. It contributed to their demise. Now let me address Judge Hamilton's question about jurisdiction. The jurisdiction of the court in bankruptcy is if the assets belong to the estate in bankruptcy. Now, these causes of action do not belong to the estate in bankruptcy. The Fourth Amendment complaint, which was discussed at the court below, has the causes of actions of our clients. I'm not going to mention two or three, but just as an example. For example, Complaintee Joel Rivera Morales said that he was going to retire at 65 with 65% of his salary. As a result of the bankruptcy and the demise of the retirement system, he now has to wait until age 67 and will only receive 34% of his salary. That is his cause of action. Complaintee Maria de Lourdes Gomez, she has to work an additional six years and will only receive 38% of her salary. Complaintee Hector Cruz Villanueva will receive well under 75% of his salary and will continue to cause intense suffering. That causes of action. The question is whether that causes of action belong to the bankrupt estate. They do not. They belong to individual plaintiffs. Now, the error that the bankruptcy court made was that it assumed that these claims were derivative in nature. Derivative from the bankruptcy filing and the award and the final decision regarding all the creditors of the ERS, the employment retirement system. Now, let's see. These causes of actions are personal in nature. The bankruptcy estate could not execute, could not carry, could not take these causes of action itself. Now, the court determined at the behest of UBS, the district court determined that these were derivative from the fact that UBS had a contract with ERS. Now, and they further said that there was no duty. We were talking about duty a little while ago. Can I ask you a question? Do you agree that the plan prohibits derivative claims based on injury to ERS? No, no, no. These are derivatives. Let's get to that, Your Honor. These are claims of their own. They do not derive from the injury to the ERS. And there's also mention about a duty, that there's no duty between UBS and the individual plaintiffs. That turns on the merits of the case. That is why I say that the district court did not have jurisdiction. Because the court that is entitled to determine whether there is a duty that was breached, whether our clients have a cause of action for their own particular specific damages, is something to be when the damages are not derivative and do not belong to the estate in bankruptcy. That is a question for the local commonwealth court to determine. I'm not saying that they will not prevail. They could. Maybe they will be able to convince the court that there is no duty of UBS towards our plaintiffs, our individual plaintiffs. But it's not for the judge in bankruptcy to determine that. It is for the commonwealth court to determine that because this is not an asset of the bankrupt estate. It's as simple as that. But counsel, did you and the clients have any relationship other than through ERS? Yes. What was it other than the fact that they were mandated? I was here when you asked the questions about the tort. In Puerto Rico, the general tort statute under Article 18.02 is extremely broad. Now, what are the elements of it? If somebody causes harm to another by fault or negligence, they are responsible. There's no definition of that. And the Supreme Court of Puerto Rico has consistently held that what causes an injury is as broad as human conduct itself. Now, boy, let's go to the specifics. UBS is a broker dealer wearing three hats and inducing the retirement sister to enter into this catastrophic POB issuance of $3 billion. Okay? UBS is a broker dealer and wearing hats and sold this to his own funds and all of that. Our clients, that UBS, that broker dealer, had a specific duty of Uberri Manfides, just like in Massachusetts now with the recent case that we called it. Uberri Manfides almost would fail. It's part of the legislation in only five jurisdictions in the entire United States. Massachusetts is one, and Puerto Rico is another. I don't remember the other four or five. And the thing is that Uberri Manfides is not carrier-attemptor. It's not buyer-beware. So our clients had the right to believe that UBS was acting in accordance with its obligation, general obligation, not necessarily to them, but they had a general obligation to act in good faith and almost good faith. So whether my clients are entitled to Uberri Manfides under the Puerto Rico Uniform Security Act, known as PRUSA, which is comparable to the MUSA, Massachusetts Uniform Security Act, whether they are entitled to that or not, under our law in Puerto Rico, is something for the Commonwealth Court to decide. Because these claims that are included in our Fourth Amendment complaint do not belong to the state. Unfortunately, Judge Taylor Swain was swayed by the argument of UBS that these are claims related to the bankruptcy or derivative from the bankruptcy. And that is not correct. Our claims are under Article 1802, based on the fact that UBS breached its fiduciary duty in recommending the issuance of the DOEs. I understood part of your argument to be that there are allegations in your Fourth or Fifth Amendment complaint that support the finding that these are investor causes of actions. That these are what causes of actions? I'm sorry. Investor causes of actions. No, no. That was UBS's argument. These are not investors. But that's not the argument. We're not arguing that they are investors. We are arguing that they who invested their funds in the retirement system, which, by the way, is not a corporation with shareholders. It's a trust. It's a trust created by law. And behind that trust were my clients. And UBS knew, or should have known, that when it was recommending to that trust to engage in a $3 billion DOE issuance, that behind that trust there were tens of thousands of Puerto Rican government employees who had put all of their lifetime savings into that trust. They could not act in total disregard of that fact. And what we are saying is that under Article 1802 and under the jurisprudence of Puerto Rico, the Supreme Court has stated that any conduct, all types of conduct, can be accountable under Article 1802 because Article 1802 is not defined and, therefore, the conduct that is comprised under Article 1802 can be as broad as the conduct of humans itself. Do you think a class of Puerto Rican taxpayers could sue UBS for this comment on disastrous effects it had on human sciences? That's a good question. I don't know. I haven't studied it. I could study it. I could consider it. But that's not what we are doing. I'm dealing with people, pleasant, but who now have to work four years and earn less. I don't know what the taxpayers will say. Counsel. Counsel. Can I ask you a question? We read your briefs, okay? Yes. I have questions. One of my questions is the district court here seems to be operating on the belief that all of your clients are being paid all of the pensions funds that they are owed. Is that correct? No, it's not. Why not? That is not correct. Our clients – I invite you to read the Fourth Amendment complaint. By the way, in response to your question, we converted this Fourth Amendment complaint into a class action complaint, which is standard and state pending the result of this appeal. If you take a look at the paragraphs of our complaint, which specifically mention the losses that our clients have incurred, as an example, we are talking about specific losses for the individuals and that they have not been compensated and will never be compensated by the outcome. Is the difference between vested and expected pension funds? Vested and expected. Yes. They were both vested and expected, and now they have much less. All right. Well, I'll ask the defense counsel. Sure. I'm wondering if the difference is between that your clients are being paid all of their vested rights but less than they expected. No, they are not being paid all of their vested rights. That was the question. I didn't understand it. That is correct. Thank you, counsel. At this time, would counsel for Appley UBS Financial Services, Inc. please introduce himself on the record to begin? Nine minutes. Good morning. It's Paul Lockwood on behalf of UBS. Let me just start by addressing that last question about what the injury was to these claims. So the facts that were cited by counsel about the losses are not in the record. I don't think they're true, but there's no record cited for them. The injury is described in the complaint. That complaint was filed in 2017. The allegations about the injury date to market conditions from 2008, kind of the nadir of the market. But what the district court discussed is how people were being dealt with in 2021 under the plan and stated that there's a different system to compensate them under the plan. And that's why the district court was accurate in saying that they're being well taken care of and they're being differently taken care of. The ERS was dismantled and no longer exists. And let me just start by talking about, at least as I understand it, the challenge. The judge just went and did two things. She determined, is this part of the bankruptcy estate? Is this a derivative claim? And then she issued the injunction. I understand the challenge, and this appeal won't lead me to that first step, whether this is direct or derivative. And in bankruptcy, I think that test is well settled. There was some criticism of Judge Swain's reliance on the St. Paul v. Pepsico case from the Second Circuit from 1989. But if you look at the standard applied in that case, the standard in the Second Circuit applies in the Madoff case, which everyone cites. The cases cited by its beneficiaries are the Fifth Circuit cases in Educators Group and in the Highland case. It's really the same standard. And the Educators Group case, which my friends cite, states this. If a cause of action alleges any indirect harm to the creditor, i.e. an injury derived from harm to the debtor, and the debtor could have raised a claim for itself under applicable law, then the cause of action belongs to the estate. And what's interesting here is that the ERS was prosecuting this claim before the bankruptcy. And the complaint that they're referencing, the Fourth Amendment complaint, the ERS is a plaintiff in that complaint. And that case actually began expressly as a derivative case brought by the beneficiaries. This was over a decade ago. And we as the defendant had moved to dismiss for lack of standing. And our argument was Puerto Rico law doesn't allow for derivative cases by this system. It's not a corporation's different system that has a statute that doesn't provide for derivative cases. And we won. We got that dismissed. Two things happened in response to that. The first was that the Puerto Rico legislature passed a law. That's Law 3-2013 that's mentioned in the briefs, which stated they would have standing now to bring these claims. But it didn't change the nature of the claim. It didn't create a new cause of action, a new injury. It just said that they would have standing to sue. And the second thing that happened is on appeal, an intermediate appellate court, the Court of Appeals in Puerto Rico, reversed the trial court and said, well, they do have derivative standing even under the old law. And I would commend that opinion to you. It's the appendix to our complaint, the addendum to our complaint. And if you – two things about that ruling. If you look at the caption of that opinion, it states that the case is a derivative action for violations of fiduciary duties. That's how the case was formatted. And at addendum 11, it states that the court granted standing to the beneficiaries there because the board hadn't acted. And because they were acting to protect the well-being of the entire retirement system. Such action is vested with the highest public interest. So it wasn't their own particular circumstances that they were sitting on behalf of. They were acting for the system. That is really driven home in 2016 when the system intervenes in the case. Prior, the board wasn't acting. A new board was put in place. Politicians got elected in favor of the case. They intervened, and they brought the case on behalf of the ERS expressly. And the 1802 tort claim that's referenced was then pleaded in a complaint. And that claim is pleaded on behalf of the system, and the beneficiaries are derivative claims to that. And Judge Wren, in a very excellent analysis, looked at that count in the complaint and looked at what was alleged in support of it. And that's paragraph 7.2 of the complaint. It's in the record. It's 776. And the paragraph supporting this claim says, The grossly negligent and illicit conduct of UBS and UBS consultant providing services that they were required to the system and breached by such defendants of their contractual, non-contractual, and fiduciary duties to the system caused the system multimillion-dollar damages. So again, the way that their own complaint is framed supports the derivative context. Now, the suggestion that they're investors is belied by their very allegations in the complaint. And this isn't even a matter of what article of pleading that they can fix, because the fundamental nature of the claim is that UBS allegedly supported a plan to pursue a transaction to get arbitrage. They essentially issued bonds at 5% and they were going to invest at 10%, and they were going to take that 5% spread every year, put it into the system to improve its liquidity. It was supposed to provide positive arbitrage. And in section 4.1 of the complaint—this is at 751—the allegation is, This positive arbitrage would produce profits for the system, which would allow it to mitigate its chronic lack of liquidity. This was general liquidity they were trying to create. This wasn't assigned to any particular retiree or investor. This is money they could use to pay their rent. It's just general money poured into the system. Now, at 758 of the record—this is paragraph 422—the allegation is this didn't work. It actually allegedly created negative arbitrage. And they say, This negatively affected the liquidity of the system, significantly weakened its financial position, and caused a credit downgrade. Again, this is generalized loss for the entity that all of the creditors, including these retirees, suffered. And who was the decision-maker? It wasn't any individual retiree deciding to invest in the bonds. 4.58 of the complaint, which is at 767, states that UBS advised the retirement system and that the retirement system administrator was never fully aware of the possible repercussions that the issuance of the bonds would have. So that injury and the decision-making is all centralized. So compare it to the cases that they're pointing to. They mentioned the Robinhood case in Massachusetts. Those were customers of the broker-dealer, direct customers of the broker-dealer. They referenced the Seven Seas case in the Fifth Circuit, Highland Capital case. That was a bankrupt oil company that had issued bonds. And the people who bought the bonds sued a consultant that provided a report that the investors replied on. It was a financial report describing the financial condition of the company. And the reason why they were able to sue is that they bought the bonds with their own money. They directly dealt with the party that they were suing and gave them a financial report that was false, and they suffered individual losses. So that wasn't part of the bankruptcy state, and they were able to go forward with it. I think it also bears emphasis here that UBS is not here asking for an extinguishment of its liability. We're going to get sued on this. It's a question of who is suing us. And you're going to hear in a moment from the avoidance trustee that under the plan, under 7d8.6 of the plan, those claims are given to the trustee if they're assets of the ERS. And the beneficiaries no longer have an interest in them. They were separately dealt with under the plan. Just a question for you. Sure. I think I agree that from the plan you can tell that the avoidance action trustee has the power to prosecute claims related to harm to ERS. Okay. But so assuming there were claims of direct injury, does the plan clearly state that individual ERS beneficiaries, like the appellants, can't obtain damages against the underwriters? Oh, there's not language to that effect in the plan. What the plan states is if there are derivative injuries, then those are assets of the ERS, and the assets of the ERS would go to one of two places. If it's part of the avoidance trust action, it goes to the avoidance trust. If it is not in that set of assets, it goes to the Commonwealth, and the ERS is eliminated. So in no circumstances can the beneficiaries of the ERS keep tapping their position as ERS beneficiaries to get these assets because they're now beneficiaries of a different trust. And I would – you know, the last word is Judge Smoot really dealt with this for years, right? Put the pieces of this puzzle together. This is an important piece of the puzzle. I don't think you can pull it out without doing a lot of damage. Thank you. Thank you, counsel, at this time. Counsel for Drivetrain, LLC, please introduce yourself on the record to begin. Thank you, Mr. Court. May it please the court. Good afternoon. John Ernst here on behalf of the avoidance action trustee. I'd like to start by making two very straightforward observations. Mr. Lockwood is not entirely correct in that he's going to get sued. We've already sued him. He's – UBS isn't getting away from anything, and personally, I hope that he either settles or gets many millions of dollars for one simple reason. Our constituency are the general unsecured creditors, and under the plan of adjustment, the majority of what they got were uncertain litigation claims. The second point is we heard a little bit of conversation about property and estate. This isn't about property and estate. This court has said it's not about property and estate. And Garcia-Garcia, which is a First Circuit case of 2019, quote, PROMESA and the Municipal Bankruptcy Code instruct that we replace all instances of property and estate that appear in the incorporated provisions of the bankruptcy code with property of the debtor. That's the end of the quote. In other words, this court said that this is broader. PROMESA makes the scope broader than the property of estate that would be in a normal Chapter 11. This case does not present any novel issue. It doesn't present the – it's the application of longstanding jurisprudence about derivative claims and a carefully evolved jurisprudence. There's nothing new here. The claims against UBS, those were part of consideration in a very intricate scheme of compromise and settlement that Judge Swain oversaw. These claims were placed in a post-confirmation litigation trust, my client, UBS Action Trustee, with litigation proceeds to benefit the general unsecured predators. The plaintiffs, they try to do what is just not permitted in the insolvency. As retirees, they want to step into the shoes of the debtor, the IRS, and jump the line ahead of any other general unsecured predator, which wrecks the entire purpose of an equitable distribution. They change that priority. As the trial court determined, the plaintiffs redeployed any potential proceeds of litigation against UBS to support recoveries for other predators. In this instance, the general unsecured predators. What Judge Swain did, and she made the difficult position, took the – made the difficult point of carefully guarding the rights of the retirees. She, quote, eliminated any reduction in accrued benefits and certain unretired benefits for retired and active employees. So people that are working today would still get the benefit, as well as the people that were already counting on their pension benefits. Counsel, what do we do with what we're being told about retirees who are not getting the benefits? But what they were not promised? I don't know what the expectation is, but this is after a long plan where there was – the plan where this is what the IRS is getting. I remember sitting there and the judge saying, I'm not cutting the benefits. Okay, but we're being told that it's a shortcut. But I'm not exactly sure what our factual record is here, but I'm struggling with what is new information to do with that. Okay. As am I. As am I, Judge. Respectfully, I think that the evaluation of what was available by the IRS, pursuant to the IRS, as the debtor over the period of years, was examined by the court, the financial oversight board, which resolved it, as well as every other constituency, all of which were invited to participate in this plan. There's something like 50 classes of creditors in that plan. I do not understand how, if Judge Swain – we would have to say that Judge Swain is wrong. If she says that she has taken a plan that eliminated any reduction in approved pensions and other retiree benefits, I have to take her into court. I have not seen anybody that has challenged that in a meaningful way, other than what we heard here today. I guess what you would say is you would need something very specific from the plaintiffs to show that that was clearly erroneous in some fashion. Correct. And I think that after four or five bites into the apple with amended complaints, that still hasn't come forward. I think that what you'll find is that the judge confirmed a plan that gave the retirees the certainty of all their benefits, and what they gave the general unsecured creditors was the uncertainty of potential possible litigation recovery. That's what it comes down to. We've all heard the phrase, you know, you can't have your cake and eat it too. I would submit this is more about let's have our cake as retirees, but let's also eat the general unsecured creditors' cake as well. The ERS plaintiffs, they claimed that they were damaged by the losses to ERS, but they sustained no damage that I can tell from the plan because their benefits were protected. What I do know is those losses, since money is not elastic, those were absorbed by other classes of creditors, including the general unsecured creditors. So in return to make up that hole, we're out of them with cash. It's been put forward that that litigation was provided to us. I do want to clarify if it isn't. If I may finish. The plan provided for a pension reserve trust that by the end of this decade should have over $3.1 billion that's solely for the purpose of ensuring that the retirees get what they earn and what they would have gotten under ERS. And it's taken, because it's got independent management, it's taken out of the realm of politics and some of the other issues that caused this in the first place. With that, we see no abuse of discretion, and the Abordance Action Trustee, respectfully, would ask that the Court affirm Judge Swain's order. Thank you. Thank you, Counsel. At this time, Counsel for the Appellant, please reintroduce himself on the record. He has a three-minute rebuttal. Thank you very much, Harold Vicente, once again, for the plaintiff appellees. I want to make, in this brief three minutes that I have, four points. One, both were plaintiffs in this complaint that was filed, both the ERS and the individual plaintiffs. It started out as a derivative case, but even when it ceased to be a derivative case because the ERS joined the claim eventually, they continued to be individual plaintiffs themselves, number one. It failed before the trial court, and the Court of Appeals reversed and stated unequivocally that our clients had standing to sue UBS, number three. No, number two. In addition to that, the laws of Puerto Rico adopted law three that stated unequivocally that our clients had a private right of action to claim their own damages against the underwriters. Number three, whether plaintiffs are investors under BRUSA is an issue for the commonwealth court. If they are not, they can say that to the commonwealth court. The district court, the bankruptcy court could not convert their claims just because they were derivative. Even if they are considered derivative, the claims, when you analyze the claims, it's their claim, and that does not belong to the ERS. Our cases that we cited in our brief are clear on that. Who is the owner of the claim? The owner of the claim is not the ERS, and the ERS cannot claim for our clients. And four, the avoidance action trustee cannot claim for our clients either because those claims belong to our clients. What the avoidance action trustee is claiming against UBS is simply for disgorgement of commissions and fees. That's all that they are claiming. It could be millions of dollars conceded. I think it's $14 or $17 million. I know that because I studied. But that is their claim, and that's a claim under the bankruptcy proceedings. So finally, I still have 20 seconds. I submit my case very respectfully. I ask this court to consider that our clients have rights, and they should be recognized before the local courts. With that, I submit our case on our brief, and I respectfully thank you for your attention and your patience with me. Thank you, counsel. That concludes oral argument in this case.